# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

CHRISTOPHER CLEVELAND, )
          Plaintiff, )
v. ) No. CIV 13-247-RAW-SPS
KAMERON HARVANEK, et al., )
          Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. The court has before it for consideration plaintiff's complaint, the defendants' motion, plaintiff's response, the defendants' reply, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Jess Dunn Correctional Center in Taft, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at John Lilley Correctional Center (JLCC) in Boley, Oklahoma. The JLCC defendants are Warden Kameron Harvanek, Warden Doug Byrd, Law Librarian Lisa Collins, Warden's Assistant Alice Turner, Mailroom Officer Susan Welcher, Unit Manager-Disciplinary Officer Russell Littlejohn, and Unit Manager-Disciplinary Officer Terry Edminsten. Plaintiff also has named Former DOC Director Justin Jones, DOC Administrative Review Manager Debbie Morton, and Oklahoma County Assistant District Attorney Jaclyn Rivera.[1]

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See*

The defendants have moved the court for dismissal of this action or in the alternative for summary judgment. Having moved for summary judgment in their favor, the movants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). "To defeat a motion for summary judgment, evidence . . . must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. With these standards in mind, the court turns to the merits of the defendants'

---

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

motion.

**Count I**

Plaintiff alleges in Count I of the complaint that on October 24, 2011, he asked Defendant Law Librarian Lisa Collins if he could receive additional hours in the law library to respond to a motion concerning his child in an ongoing juvenile deprived action lawsuit in Oklahoma County District Court. Plaintiff told Defendant Collins that the case, filed by Defendant Oklahoma County Assistant District Attorney Jaclyn Rivera, involved a petition to terminate plaintiff's parental rights, and a telephone hearing was scheduled for October 31, 2011. Collins allegedly told plaintiff he could not work on the case in the law library, and the only civil cases he could work on in the library were those challenging the conditions of his confinement.

On that same day, plaintiff submitted a Request to Staff (RTS) to Warden Kameron Harvanek, requesting that Defendant Collins be directed to allow him to research his parental rights case. Harvanek responded, stating, "Ms. Collins is correct. She is following policy." On November 2, 2011, plaintiff submitted a grievance to the warden's office, requesting access to the courts. Harvanek's response stated, "According to OP-030115 Sec. 1, Subsection A, offenders are provided law libraries to assist them in cases related to conditions of confinement and for post-conviction relief therefore you will not be allowed use of the law library for termination of parental rights." On November 7, 2011, plaintiff appealed Harvanek's denial to Defendant DOC Director Justin Jones, and on November 28, 2011, Defendant Administrative Review Manager Debbie Morton affirmed Harvanek's response. (Dkt. 1-5).

On November 10, 2011, plaintiff informed Oklahoma County District Court Judge Larry Shaw in a telephone conference that he was not being allowed to work on his case in the prison law library, and the judge advised plaintiff he would contact Defendant Warden's Assistant Alice Turner to advise her of plaintiff's constitutional rights. Judge Shaw also gave plaintiff 20 days from November 10, 2011, to file motions and to respond to the State's

3

motions. On November 14, 2011, plaintiff sent Defendant Collins a RTS, reporting the judge's statements and asking to work on his parental termination case, to print his documents, and to send them as legal mail. Ms. Collins again advised that plaintiff's case did not fall in a category that would permit him to work in the law library. Also, Ms. Turner had informed Judge Shaw of the law library rules, and he understood. Plaintiff filed a grievance on the issue to Warden Harvanek, advising that Judge Shaw had set a deadline for filing documents. The grievance was returned unanswered, because plaintiff had failed to include a copy of his RTS. He was given ten calendar days to correct the deficiency. (Dkt. 1-1 at 6-8).

Plaintiff further alleges that on December 7, 2011, Defendant Collins interfered with his sending legal documents to the Oklahoma Supreme Court. She refused to make copies of a petition for a writ of mandamus to challenge the policy regarding access to the courts, and she said the petition could not be mailed through the legal mail system. Plaintiff then put the petition in an envelope with postage and placed it in the mailbox. The next morning Collins allegedly stopped the package from being mailed to the Clerk of the Appellate Courts. Plaintiff sent Collins a RTS, asking why she had not made copies or allowed his mail to go out. He next filed a grievance to Warden Harvanek concerning Collins' actions. The grievance was returned, because plaintiff had failed to include a copy of his RTS. Plaintiff was given ten calendar days to properly submit his grievance. (Dkt. 1-1 at 9-10).

It is undisputed that access to the courts and the means to effectuate such access are fundamental constitutional rights. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, "the constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (citations omitted). The Supreme Court has held that the guarantee of access to the courts requires prisons to provide legal tools "inmates need in order to attack their

sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

As for the alleged blocking of his mail to the Oklahoma Supreme Court, the record shows that on December 12, 2011, five days after Collins allegedly prevented his mail from being sent, plaintiff initiated an action concerning access to legal materials to prepare for his parental termination case. *See Cleveland v. Havanek*, No. 111, 188 (Okla. Dec. 12, 2011) (Dkt. 1-2 at 41). Plaintiff clearly has failed to show an "actual injury" from Collins' acts by demonstrating the denial of legal resources "hinder[ed] [his] efforts to pursue a nonfrivolous claim" challenging the conditions of his confinement or his conviction. *See Penrod*, 94 F.3d at 1403; *Casey*, 518 U.S. at 355. After careful review, the court finds plaintiff has failed to show the existence of a genuine material factual issue in Count I.

**Count II**

Plaintiff next complains that in October 2011, his sister brought his three children, along with the children's original birth certificates, to visit him at JLCC. Sgt. Vance looked at the birth certificates and asked her to mail copies of the documents to the facility, so the children could be placed on plaintiff's visiting card. In November 2011 plaintiff's wife brought the children to JLCC for another visit. The children's birth certificates still were not on file, but Sgt. Vance again allowed the visit. Plaintiff's wife was advised that she needed to mail copies of the birth certificates before they would be allowed to visit again.

Plaintiff claims his wife mailed him copies of the birth certificates in November 2011, but he was denied his mail. He spoke with Warden Harvanek about the missing mail and allegedly was told Harvanek "had to talk to a D.A. or Judge and he would let plaintiff know his next step."

On December 2, 2011, plaintiff sent Harvanek a RTS asking about their informal conversation about plaintiff's mail. Plaintiff also inquired why talking to a district attorney

or judge was involved in the issue. The response about the mail containing the birth certificates stated, "I'm getting clarification concerning the context of the letters. You will receive what is allowable." (Dkt. 1-1 at 11).

Shortly after these events, plaintiff learned of a November 30, 2011, letter from Defendant Assistant District Attorney Rivera, that stated:

> Mr. Cleveland's parental rights have been terminated to four children previously and two children, not biological [sic] his, were removed from his home. He is also pending a termination trial on his fifth biological child in our custody." . . . [I]t is not proper for him to be receiving visits from these children.

(Dkt. 1-1 at 13-14). Three of the children named in the letter were those previously brought to the prison for visitation.

On December 15, 2011, plaintiff sent a grievance to Harvanek, asking for legal authority to prohibit plaintiff from seeing and visiting with his children for no good cause. Harvanek's response stated:

> Per OP-30118, Section 1, A, states in part: "Visiting is a privilege, not a right." Therefore I have the authority to suspend visits when I deem it is in the best interest of all parties. I have received information from Oklahoma County District Attorney's office advising your parental rights have been terminated on the following children: [names four children]. Additionally [names two children] were removed from your home. Also you have pending litigation for the termination of parental rights for [names one child]. Therefore I deem it in the best interest for all parties that you are not to visit any of the children named in this grievance.[2]

(Dkt. 1-1 at 15-16). Plaintiff contends Harvanek's decision was an act of retaliation and harassment with no legitimate penological reason to restrict visits. He filed a grievance appeal, but it was returned unanswered as untimely. (Dkt. 1-1 at 18).

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). The Supreme

---

[2] Because plaintiff's complaint and certain attachment to the complaint contain personal identifiers for the children, the Court Clerk has been directed to maintain those documents under seal. *See* Local Civil Rule 5.3.

6

Court, however, has recognized that the control of mail to and from prisoners is a necessary adjunct to penal administration. *See Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) (acknowledging that prison officials are better equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world). "[T]he relevant inquiry is whether the actions of prison officials were 'reasonably related to legitimate penological interests.'" (quoting *Turner*, 482 U.S. at 79). "Prison regulations which restrict a prisoner's First Amendment rights are 'permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to those concerns.'" *Wardell v. Duncan*, 470 F.3d 954, 960 (2006) (quoting *Beard v. Banks*, 548 U.S. 521, 528 (2006)). It is the prisoner's burden to disprove the validity of prison regulations. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The record shows that on November 29, 2011, plaintiff received a Mail Room Notice from Defendant Welcher stating plaintiff had received four letters from his wife, and prison officials were reviewing the material. (Dkt. 1-1 at 25). The next day, JLCC officials received the letter from Rivera, advising that plaintiff's parental rights had been terminated, but the letter did not state plaintiff was restricted from corresponding with family members. (Dkt. 1-1 at 13-14). Plaintiff admits the letters from his family were given to him shortly afterward, when prison officials learned he was not prohibited from receiving mail from his wife. (Dkt. 1 at 16-17). He has not presented any evidence that the delay in receiving the letters from his wife resulted from improper motive. Consequently, this "isolated incident" does not amount to a constitutional violation. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

As for plaintiff's visitation claim, the defendants assert it is unexhausted. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion

7

requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

The record clearly shows that plaintiff began the grievance policy but failed to complete it. His grievance appeal to the Administrative Review Authority was returned unanswered because it was out of time, and he did not file an application to appeal out of time. (Dkt. 1-1 at 18-19). Therefore, plaintiff's visitation claim must be dismissed for failure to exhaust administrative remedies.

**Count III**

Plaintiff alleges he was denied his First Amendment right of access to the courts through his attorney. In December 2011 he received a brief from his direct appeal counsel in Oklahoma Court of Criminal Appeals Case No. F-2011-482. Plaintiff was not satisfied

8

with the brief and wanted to raise more propositions. On December 28, 2011, he sent a RTS to Defendant Collins, asking her to let him type a supplemental brief in the case and send it to his appellate lawyer through the legal mail. Collins advised plaintiff that pursuant to OP-030115 Section V A 3, an inmate who is represented by counsel is not entitled to access to the law library to obtain information for his case. (Dkt. 1-1 at 20).

Plaintiff sent a grievance to Warden Harvanek on January 3, 2012, asking him for access to the courts and explaining that the Rules of the Oklahoma Court of Criminal Appeals allow him to file a *pro se* brief. Harvanek's response was that plaintiff would not be allowed access to the law library, because he had appointed counsel for his appeal. Plaintiff's grievance appeal also was denied. (Dkt. 1-1 at 21-24).

The Tenth Circuit has held that when an inmate is represented by counsel, he has no viable claim for right to access the law library, regardless of the type of case he is pursuing. *Love v. Summit County*, 776 F.2d 914-15 (10th Cir. 1985), *cert. denied*, 479 U.S. 814 (1986). Furthermore, as discussed above, to state a valid claim for denial of access to the courts, an inmate must show an "actual injury" by demonstrating the denial of legal resources hindered his efforts to pursue a nonfrivolous claim challenging his conditions of confinement or his conviction. *Penrod*, 94 F.3d at 1403; *Casey*, 518 U.S. at 355. Count III also fails.

**Count IV**

Plaintiff next complains that on November 29, 2011, he received a Mail Room Notice from Defendant Susan Welcher, concerning four letters from plaintiff's wife that were being reviewed. (These were the same letters discussed in Count II.) Plaintiff was informed that he would be notified in 15 days of the outcome of the review. (Dkt. 1-1 at 25). Plaintiff admits he was given the letters after prison officials determined he was not prohibited from receiving mail from his wife. (Dkt. 1 at 16-17). The court finds there is no evidence that this short delay in receiving the letters arose from improper motive, and such an "isolated incident" does not give rise to a constitutional violation. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

9

According to the Special Report, plaintiff and his wife had a history of attaching postage stamps so far below the right upper edge of the envelope that the stamps could not be cancelled. Plaintiff and his wife were instructed to affix the postage properly on the envelope, so the stamps could be postmarked. Despite this warning, on January 4, 2012, prison officials received three letters from plaintiff with the stamps improperly placed on the envelopes, in an attempt to avoid cancellation of the stamps. (Dkt. 46-14 at 37). That same day, Harvanek sent plaintiff an Interoffice Memorandum, advising as follows:

> I previously instructed you and your wife Huyen Cleveland not to place stamps on letters where they could not be cancelled. Three (3) letters were received on January 4, 2012, from your wife where this practice has continued. Therefore I am restricting you from either writing or receiving mail from her for 90 days from the date of this letter nor will you receive the letters received this date. I am granted this authority through OP-030117 Section I Subsection G 3 and 4. Any further violation of my instructions will further result in mail restriction. Corresponding with individuals is a privilege not a right thus it can be restricted or taken away.

(Dkt. 1-1 at 26).

Plaintiff filed a RTS with Harvanek on January 6, 2012, stating the DOC procedures do not address where stamps should be placed on envelopes, and it is the job of the United States Postal Service to postmark letters. Harvanek's response stated, "I instructed you & your wife to place all stamps on letters where they may be cancelled you and your wife failed to do so thus I suspended you [sic] mail privileges." (Dkt. 1-1 at 27-28).

On January 13, 2012, plaintiff sent a grievance to Harvanek, requesting relief from the RTS decision, because the letters in question did not pose a threat to the public, institutional order, or security. Harvanek denied relief, so plaintiff appealed and received the following response:

> Before January 4, 2012, I advised you and your wife to place stamps on letters where they could be cancelled. On January 4, 2012, you received three (3) letters from your wife where she had placed stamps on the envelopes in an area where they could [not] be cancelled. In accordance with OP-030117 Section I Subsection G 3 and 4 grants me the authority to restrict writing privileges thus I did so for 90 days from your wife.

(Dkt. 1-1 at 29-30, Dkt. 1-2 at 1). Plaintiff's appeal to the Administrative Review Authority

was denied on January 25, 2012. (Dkt. 1-2 at 2-3).

On January 10, 2011, Defendant Welcher sent plaintiff a Return to Sender Notification regarding unauthorized correspondence. Plaintiff sent Welcher a RTS on January 11, 2012, asking who sent the unauthorized correspondence. Welcher's response stated the correspondence was from plaintiff's wife and children, but plaintiff had been advised that he could not correspond with his wife for 90 days. (Dkt. 1-2 at 4-5). Welcher also allegedly returned mail that purported to be from plaintiff's mother, but the handwriting matched plaintiff's wife's handwriting. Plaintiff claims he was denied his constitutional right to communicate with his children when the letters were returned.

Prisons have a legitimate penological interest in crime deterrence. *See Turner v. Safley*, 482 U.S. 78, 91-92 (1987). In this instance, plaintiff was attempting to violate the following statute:

> Whoever uses or attempts to use in payment of postage, any canceled postage stamp, whether the same has been used or not, or removes, attempts to remove, or assists in removing, the canceling or defacing marks from any postage stamp, or the superscription from any stamped envelope, or postal card, that has once been used in payment of postage, with the intent to use the same for a like purpose, or to sell or offer to sell the same, or knowingly possesses any such postage stamp, stamped envelope, or postal card, with intent to use the same or knowingly sells or offers to sell any such postage stamp, stamped envelope, or postal card, or uses or attempts to use the same in payment of postage; or
>
> Whoever unlawfully and willfully removes from any mail matter any stamp attached thereto in payment of postage; or
>
> Whoever knowingly uses in payment of postage, any postage stamp, postal card, or stamped envelope, issued in pursuance of law, which has already been used for a like purpose--
>
> Shall be fined under this title or imprisoned not more than one year, or both; but if he is a person employed in the Postal Service, he shall be fined under this title or imprisoned not more than three years, or both.

Title 18 U.S.C. § 1720.

Furthermore, the United States Postal Service Domestic Manual sets forth the proper method to affix postage in Title 604, "Postage Payment Methods." Pursuant to Section 1.7,

11

"[s]tamps must be affixed firmly in the upper right corner of the address side of the mail cover." See United States Postal Service Domestic Manual, Title 604, "Postage Payment Methods" at http://pe.usps.gov/text/dmm300/604.htm#1170762. In addition, DOC Policy OP-030117(I)(G) not only prohibits violation of the United States Postal regulations, but also provides that an offender in violation of those regulations may be "placed on restricted correspondence status" for up to 90 days.

Here, the court finds the imposition of a temporary restriction on plaintiff's correspondence with his wife because of his violation of federal law advanced the legitimate interest in deterring plaintiff from continuing to commit crimes. Defendants Welcher and Harvanek did not violate plaintiff's First Amendment rights by enforcing a reasonable policy to prevent the violation of federal law.

**Count V**

Plaintiff claims that on February 2, 2012, he received four Class X misconducts from Defendant Welcher for postal violations. (Dkt. 1-2 at 10-17). Welcher had filed an Incident Report, stating she previously had placed distinctive marks on uncancelled stamps on letters plaintiff had received. (Dkt. 1-2 at 18). Plaintiff reused those stamps on letters he sent to his wife, and the wife also reused the stamps to mail a letter to plaintiff. Plaintiff contested Welcher's statement and received a disciplinary hearing that resulted in 30 days in SHU, 90 days at Level 1, and the loss of 365 earned credits. Plaintiff appealed, and Harvanek ordered a rehearing. Before the hearing began, Defendant Edminsten allegedly told plaintiff that "he needs to work real hard on his appeal, because [Edminsten] could not do anything for plaintiff, and Defendant Byrd had instructed [Edminsten] to find plaintiff guilty of a Law Violation." (Dkt. 1 at 23). Plaintiff claims he said that Edminsten was part of the conspiracy and would be sued in the future. Edminsten told plaintiff that it was all right, because he had been sued before.

Plaintiff received copies of all documents, including the Incident Report, a copy of the envelope with the misused stamps, and the Witness Discretionary Action Record

explaining that Welcher completed a written report documenting the incident and would not appear as a witness. (Dkt. 46-10 at 1-14). Plaintiff received the Disciplinary Hearing Report, and he filed an appeal for a rehearing. (Dkt. 46-11-12). Warden Harvanek dismissed three of the Offense Reports and granted a rehearing. (Dkt. 46-13). Plaintiff was found guilty in the second disciplinary hearing, based on Welcher's statement and the physical evidence of used stamps. (Dkt. 46-14 at 30).

Four days later plaintiff received a copy of the Disciplinary Report, and on March 21, 2012, prison officials conducted a due process review of plaintiff's disciplinary hearing and affirmed the findings and conclusions of the hearing. (Dkt. 46-12). On April 6, 2012, plaintiff received a written explanation of the evidence used in the hearing and the reason Welcher did not appear at the hearing. (Dkt. 46-13).

After concluding the prison appeals process, plaintiff filed a Petition for Judicial Review, pursuant to Okla. Stat. tit. 57, § 564.1. (Dkt. 46-14 at 1-9). The Oklahoma County District Court denied the petition on November 20, 2012, in Case No. CV-12-1428, and the Oklahoma Court of Criminal Appeals affirmed on May 1, 2013, in Case No. REC-2012-1141. (Dkt. 46-8).

Plaintiff alleges there was no evidence at the disciplinary hearing to support a finding of guilt of a law violation, but Edminsten made a written statement about the evidence relied upon, which was Welcher's statement about the marked stamps. Plaintiff contends that if the stamps were improper, the U.S. Postal Service would not have accepted them for postage. He also asserts this conviction and resulting inability to correspond or visit with his wife and children damaged his relationship with them.

The Supreme Court has held that constitutional due process is satisfied in a prison disciplinary proceeding if an inmate is provided the following: at least 24 hours' advance written notice of the claimed violation; unless good cause exists, an opportunity to call witnesses and to present documentary evidence in his defense; and a written statement by the factfinders giving the evidence upon which they relied and the reasons for the disciplinary

13

action taken. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). Further, procedural due process requires only that there be "some evidence" to support disciplinary sanctions within a correctional facility. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). A review of the record indicates the requirements of *Wolff* were met in plaintiff's case. In addition, the court is satisfied there exists some evidence in the record to support the conclusion that resulted from the disciplinary hearing. This ground for relief is meritless.

**Count VI**

Finally, plaintiff alleges the following acts by the defendants show they conspired and retaliated against him:

- Warden Harvanek sent his January 4, 2012, Interoffice Memorandum regarding the placement of postage stamps and the temporary restriction on plaintiff's correspondence with his wife.

- Plaintiff received Class X misconducts for improper stamp placement.

- Defendant Welcher warned plaintiff that if he continued to file Requests to Staff about his correspondence suspension, it would be considered Menacing.

- Plaintiff was denied use of the law library for his custody case.

- Plaintiff speculates that Welcher did not send some of his personal mail.

The defendants allege plaintiff's conspiracy and retaliation claims are unexhausted. As discussed in Count II, 42 U.S.C. § 1997e(a) requires plaintiff to exhaust his administrative remedies before he can present any civil rights claims concerning prison conditions to the federal courts. Prisoners must exhaust his remedies, even if "the "available" remedies would appear to be futile at providing the kind of remedy sought." *Jernigan*, 304 F.3d at 1032. Plaintiff must complete the exhaustion procedure, or the claim is unexhausted. *Id.*

The record shows that plaintiff filed no grievances alleging a conspiracy or a retaliation claim. Instead, he pursued the grievance process only for the complained-of *actions* resulting from the alleged conspiracy and retaliation. Because he failed to exhaust his administrative remedies for the conspiracy and retaliation claims, those claims must be dismissed.

14

**Injunctive Relief**

Plaintiff's claim for injunctive relief to access the John Lilley Correctional Center law library is moot, because he no longer is incarcerated at JLCC. *See Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (citing *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 (10th Cir. 1994)).

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals consistently has held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** plaintiff's unexhausted claims are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e(a), and his request for injunctive relief is DENIED as moot. All other claims are DISMISSED as frivolous, pursuant to 28 U.S.C. § 1915(e)(2). This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g).

DATED this 29th day of September, 2014.

**Dated this 29th day of September, 2014.**

                                                Ronald A. White
                                                United States District Judge
                                                Eastern District of Oklahoma